

# COURT OF APPEALS

**SECOND DISTRICT OF TEXAS**

**FORT WORTH**

### NO. 02-10-00266-CV

BILLY J. FERRELL                                                     APPELLANT

V.

BETSY PRICE, TAX                                                     APPELLEE
ASSESSOR/COLLECTOR OF
TARRANT COUNTY

----------

## FROM THE 141ST DISTRICT COURT OF TARRANT COUNTY

----------

## **MEMORANDUM OPINION**[1]

----------

Appellant Billy J. Ferrell appeals from the trial court's grant of the plea to the jurisdiction asserted by Appellee Betsy Price, Tax Assessor/Collector of Tarrant County.[2]  In one issue, Ferrell argues that the trial court erred by granting

---

[1]*See* Tex. R. App. P. 47.4.

[2]We take judicial notice of the fact that Besty Price no longer serves in this position.  *See* Tex. R. Evid. 201.  The current assessor-collector has not been substituted as a party.

the plea to the jurisdiction.  Because we hold that the trial court did not err, we affirm the trial court's order dismissing Ferrell's claims against Price.

This suit arises out of a dispute over the ownership of a van that Ferrell had owned.  In Ferrell's petition, he alleged that he had contracted with A Plus Mobility, Inc. to perform some modifications and repairs to the van.  He asserted that A Plus agreed to be paid by the Veteran's Administration for "all covered modifications and repairs" and by him for all "uncovered modifications and repairs."  After performing work on the van, A Plus returned the van to Ferrell, who refused to accept the van because some of the work had not been performed or had been performed in a defective manner.  Ferrell alleged that the Veteran's Administration refused to pay A Plus for any of the work and that A Plus refused to complete or correct the work.  Ferrell alleged that A Plus then foreclosed its "purported" mechanic's lien on the van and sold the van at a private sale to Wanda Jean Curtis and Justin Randal Curtis.

Ferrell filed suit against the Curtises, A Plus, Sandy Patterson (who Ferrell alleged was the "alter-ego" of A Plus), the Department of Transportation (the department), and Price.  Price filed a plea to the jurisdiction asserting that she had been sued in her official capacity and therefore the suit was a suit against Tarrant County.[3]  She argued that because the suit was against a governmental

---

[3]*See Tex. A & M Univ. Sys. v. Koseoglu*, 233 S.W.3d 835, 844 (Tex. 2007) (stating that a suit against a state official in his official capacity is actually a suit against the entity, and when "a state official files a plea to the jurisdiction, the

2

entity and because Ferrell sought retrospective injunctive relief and monetary damages, she was immune from suit.

After Price filed her plea to the jurisdiction, Ferrell filed his second amended original petition in which he asserted that Price "caused to be issued a new title to [the Curtises], even though the proof furnished by [the Curtises] and A Plus showed a failure to adequately conform with the procedure for foreclosing a Mechanic['s] Lien." He asserted that "the proper, lawful action of [Price], refusing to cause to be issued a new title, was a ministerial [act]." Ferrell sought from Price damages "[f]or loss of the value of his van and loss of use" and a "permanent injunction ordering [Price] and [the department] to cancel the current Certificate of Title to the van and to issue a new Certificate of Title to [Ferrell]." Thus, Ferrell sought both the return of his van and title to it as well as damages.

Ferrell also filed a response to Price's plea in which he asserted that the trial court had jurisdiction over his claims for injunctive relief and that "[s]ince these issues relating to damages are properly before [the trial court] and will need to be decided at trial, the question of whether [Price] will be liable for said damages should be reserved until [j]udgment is entered." The trial court granted Price's plea, and Ferrell now appeals.

official is invoking the sovereign immunity from suit held by the government itself").

3

We review a trial court's ruling on a plea to the jurisdiction de novo.[4] A plaintiff has the burden of alleging facts that affirmatively demonstrate that the trial court has subject-matter jurisdiction.[5]

The state has sovereign immunity from suit and from liability unless that immunity has been waived.[6] This immunity extends to employees sued in their official capacity because in such suits the real party in interest is the government entity; "a suit against a state official is merely 'another way of pleading an action against the entity of which [the official] is an agent.'"[7] Accordingly, because a plaintiff must allege facts demonstrating jurisdiction, a plaintiff asserting a claim against a governmental employee in his or her official capacity must allege facts that affirmatively demonstrate that the legislature has waived immunity for the claims brought.[8] But the immunity of a government employee extends only to the employee's performance of discretionary duties in good faith that are within the scope of the employee's authority.[9]

---

[4]*Pakdimounivong v. City of Arlington*, 219 S.W.3d 401, 407 (Tex. App.—Fort Worth 2006, pet. denied).

[5]*City of Fort Worth v. Robinson*, 300 S.W.3d 892, 895 (Tex. App.—Fort Worth 2009, no pet.).

[6]*State v. Lueck*, 290 S.W.3d 876, 880 (Tex. 2009).

[7]*Koseoglu*, 233 S.W.3d at 844.

[8]*City of Arlington v. Randall*, 301 S.W.3d 896, 906 (Tex. App.—Fort Worth 2009, pet. denied).

[9]*Kassen v. Hatley*, 887 S.W.2d 4, 9 (Tex. 1994).

With respect to claims for injunctive relief, a governmental entity is immune from a suit seeking imposition of an affirmative duty based on a past alleged actionable wrong.[10] Governmental immunity also generally bars suits for retrospective monetary relief.[11]

But an *ultra vires* claim against a state official—that is, a suit against a state official for acting outside his or her authority and seeking to require the state official to comply with statutory or constitutional provisions—is not barred by sovereign immunity.[12] Accordingly, a plaintiff who successfully proves an *ultra vires* claim is entitled to prospective injunctive relief, as measured from the date of injunction.[13] And "where statutory or constitutional provisions create an entitlement to payment, suits seeking to require state officers to comply with the law are not barred by immunity merely because they compel the state to make those payments,"[14] but generally only prospective relief is available.[15] To fall

---

[10]*Randall*, 301 S.W.3d at 907. That case noted that a plaintiff may seek injunctive relief against a governmental entity for constitutional violations, but Ferrell has not alleged any constitutional violations in this case.

[11]*City of El Paso v. Heinrich*, 284 S.W.3d 366, 368–69 (Tex. 2009).

[12]*Tex. Parks & Wildlife Dep't v. Sawyer Trust*, No. 07-0945, 2011 WL 3796347, at *8 (Tex. Aug. 26, 2011); *Tex. Lottery Comm'n v. First State Bank of DeQueen*, 325 S.W.3d 628, 633 (Tex. 2010).

[13]*Heinrich*, 284 S.W.3d at 376.

[14]*Id.* at 371.

[15]*Rolling Plains Groundwater Conservation Dist. v. City of Aspermont*, No. 08-0591, 2011 WL 5041964, at *2 (Tex. Oct. 21, 2011).

within this *ultra vires* exception, "a suit must not complain of a government officer's exercise of discretion, but rather must allege, and ultimately prove, that the officer acted without legal authority or failed to perform a purely ministerial act."[16]  Thus, in this case, Ferrell had to have alleged either that (1) Price acted without legal authority or (2) Price failed to perform a purely ministerial act.

In his sole issue, Ferrell argues that the trial court erred by granting the plea to the jurisdiction because he alleged in his pleadings an *ultra vires*, ministerial act by Price and because the relief he requested was not solely money damages, and therefore his pleadings did not affirmatively negate jurisdiction.  He further argues that if his pleadings were not sufficient to establish jurisdiction, he should have been given the opportunity to amend the pleadings.

Regarding Ferrell's claim for retrospective monetary damages, he failed to allege any statutory or constitutional provision creating an entitlement to payment.  His injury has already occurred, and he seeks a remedy in the form of an award of money damages.  Thus, unless immunity was waived by the Legislature, even if he had alleged an act by Price that was outside her legal authority or was a failure to perform a ministerial duty, he would not be entitled to this retrospective relief.[17]

---

[16] *Heinrich*, 284 S.W.3d at 372.

[17] *City of Dallas v. Albert*, No. 07-0284, 2011 WL 3796339, at *8 (Tex. Aug. 26, 2011).

Ferrell did not, however, point to any statutory provision waiving immunity for his claim for retrospective monetary damages. Although Ferrell did not allege a waiver of immunity under transportation code section 520.005(b), we take notice that this section provides that "[a]n assessor-collector who fails or refuses to comply with Chapter 501 is liable on the assessor-collector's official bond for resulting damages suffered by any person."[18] We need not determine, however, if this section waives immunity from suit for claims against an assessor-collector for violations of that chapter or if it only provides a source of payment for successful *ultra vires* claims[19] because not only did Ferrell not allege that this section waived immunity, but this section is inapplicable on its face to the claims pleaded by Ferrell.

For section 520.005(b) to apply, Ferrell would have had to allege that Price failed to comply with some part of chapter 501. In his pleadings, Ferrell alleged that Price "caused to be issued a new title" to the Curtises even though "the proof furnished by [the Curtises] and A Plus showed a failure to adequately conform with the procedure for foreclosing a Mechanic['s] Lien." But Ferrell did not allege what part of the procedure for foreclosing on a mechanic's lien was not complied with, whether the procedure was required by chapter 501, what other part of

---

[18]*See* Tex. Transp. Code Ann. § 520.005(b) (West Supp. 2011).

[19]*But see Romo v. Cavender Toyota, Inc.*, 330 S.W.3d 648, 652 (Tex. App.—San Antonio 2010, no pet.) (concluding that this section did not waive the tax assessor-collector's immunity from suit).

chapter 501 Price should have followed and did not, or what proof furnished by the Curtises and A Plus showed that chapter 501 was not complied with.

These defects in pleadings could be cured by amendment. But Ferrell cannot amend his pleadings to allege any facts showing that Price "caused to be issued" the certificate of title because she did not do so; the department did. That is, it is not the county assessor-collector who ultimately issues title to vehicles. The assessor-collector accepts the application for the certificate of title, as well as evidence of title delivered to the assessor-collector by the applicant.[20] The assessor-collector makes an initial determination of whether the requirements of chapter 501 are met and issues a title receipt.[21] But the assessor-collector then forwards the application and evidence to the department, which determines whether the requirements of the certificate of title act are met and then issues the title.[22] Thus, Ferrell failed to allege an act by Price in

---

[20]Tex. Transp. Code Ann. § 501.027(a) (West Supp. 2011).

[21]*Id.* § 501.024(a) (West Supp. 2011).

[22]*Id.* § 501.021 (West Supp. 2011) (stating that "[a] motor vehicle certificate of title is an instrument issued by the department"), § 501.027(b) (providing that after the department receives an application for a certificate of title and the department determines that the requirements of this chapter are met, the department shall issue the certificate of title); *see also id.* § 520.023(f) (West Supp. 2011) (providing that when a vehicle is transferred, the department may not issue a certificate of title for the vehicle until the transferee applies to the county assessor-collector as provided by transportation code chapter 501), § 501.071 (West Supp. 2011) (providing that in the sale of a used vehicle, the owner must transfer the certificate of title at the time of the sale using a form prescribed by the department), § 501.131 (West 2007) (requiring the department to prescribe forms for a title receipt and other forms the department deems

violation of chapter 501 because the ultimate act he complains of—issuing the certificate of title—was not done by Price, and Ferrell failed to allege any other act by Price that was without legal authority. Ferrell therefore also failed to allege that Price failed to perform some ministerial duty because regardless of whether issuing a certificate of title is a ministerial or discretionary duty, the duty does not fall on Price to perform.

For the same reason, Ferrell's claim for injunctive relief ordering Price to issue him a certificate of title to the vehicle also fails. Price did not act outside of her authority or violate any statutory provisions by issuing the title to the Curtises for the simple reason that she did not issue the title at all. Ferrell's assertion that Price acted *ultra vires* fails as a matter of law. Price would have no authority under the statute to issue Ferrell a certificate of title even if ordered to do so, and thus his requested relief of a "permanent injunction ordering [Price] . . . to cancel the current Certificate of Title to the van and to issue a new Certificate of Title to [Ferrell]" is not available to him.

---

necessary and to provide those forms to each county assessor-collector). When Ferrell filed his suit in 2008, the department issued certificates of title. In 2009, the Legislature amended the law to designate the Department of Motor Vehicles as the government entity charged with issuing certificates of title. *See* Act of May 23, 2009, 81st Leg., R.S., ch. 933, § 2D.01, 2009 Tex. Gen. Laws 2485, 2493 (amending Tex. Transp. Code Ann. § 501.002(3) (West 2007)).

We acknowledge that at least one case has stated without discussion that the tax assessor-collector in that case issued a certificate of title.[23] But although chapter 501 makes the tax assessor-collector an integral part of the title issuance process, it plainly provides that the department itself performs the act of issuing certificates of title.

In sum, because Ferrell failed to allege what provisions of chapter 501 or any other law, if any, that Price failed or refused to comply with, Ferrell's pleadings do not show any waiver of immunity and are therefore deficient. And even if Ferrell had pled facts to show that Price had not followed chapter 501, Ferrell's damages are based on his loss of title. By statute, the department determined whether title requirements were met and issued the title that Ferrell complains about. Thus, his claim for monetary damages is not based on any *ultra vires* act by Price. Furthermore, Price cannot issue title to Ferrell, and because she did not issue the title to the Curtises, he cannot say that in issuing the title to the Curtises, Price failed to perform a ministerial act or that she acted without legal authority.

We further note that the transportation code provided a method to Ferrell for obtaining the certificate of title to the vehicle without resorting to a lawsuit.

---

[23]*See Romo*, 330 S.W.3d at 650 (stating without discussing that the tax assessor-collector issued a certificate of title that failed to reference the existence of a lien). *But see Credit Indus. Corp. v. Pac. Fin. Corp.*, 329 S.W.2d 945, 946 (Tex. Civ. App.—Waco 1959, writ ref'd) (noting that the application for certificate of title in that case was made through the tax collector to the State Highway Department, which then issued a certificate of title).

Under section 501.051, the department must revoke a certificate of title if, among other things, the application contains a false statement, the applicant fails to furnish required information, or the applicant is not entitled to the certificate.[24] Ferrell could have invoked this provision of chapter 501 to ask the department to revoke the Curtises' certificate of title. Chapter 501 further provides that a person aggrieved by the department's decision in such a case may apply for a hearing on the issue.[25] If the person is aggrieved by the result of the hearing, the person may appeal to the county court.[26] If, in the county court, "the department's action is not sustained, the department shall promptly issue a certificate of title for the vehicle."[27] Thus, chapter 501 provides both a remedy and an administrative procedure (with right of appeal in the county court) for obtaining that remedy, but Ferrell chose to file this suit instead. Having already held that the trial court did not have jurisdiction, we do not make the further determination of whether Ferrell's failure to follow this procedure deprived the trial court of jurisdiction.[28] We note the procedure only to indicate that our

---

[24]Tex. Transp. Code Ann. § 501.051 (West Supp. 2011).

[25]*Id.* § 501.052(a) (West Supp. 2011).

[26]*Id.* § 501.052(e).

[27]*Id.*

[28]*See Employees Ret. Sys. of Tex. v. Duenez*, 288 S.W.3d 905, 908–09 (Tex. 2009) (stating that "[w]hen an agency has exclusive jurisdiction of a dispute, the courts have no jurisdiction until administrative procedures are exhausted"); *see also* Tex. R. App. P. 47.1 (providing that the court of appeals

11

holding should not be construed as leaving persons such as Ferrell, who believe they have been unlawfully deprived of their vehicle, without a remedy.

Ferrell asks in his brief that if this court determines that his pleadings were insufficient to establish jurisdiction, he be given the opportunity to amend. But Ferrell's pleadings negate jurisdiction as a matter of law, and we therefore decline to send the case back to the trial court to allow Ferrell the opportunity to amend.[29] We overrule Ferrell's sole issue.

Having overruled Ferrell's sole issue, we affirm the trial court's order dismissing Ferrell's claims against Price.

LEE ANN DAUPHINOT
JUSTICE

PANEL: DAUPHINOT, GARDNER, and WALKER, JJ.

WALKER, J. concurs without opinion.

DELIVERED: December 22, 2011

---

must hand down a written opinion that is as brief as practicable but that addresses every issue necessary to final disposition of the appeal).

[29] *See Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 227 (Tex. 2004) (stating that if the pleadings affirmatively negate the existence of jurisdiction, then a plea to the jurisdiction may be granted without allowing the plaintiff an opportunity to amend).